**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LUCIO ALFONSO ESPINOSA, MAURICIO GARCIA RAMIREZ, and LEONEL ARMANDO RAMOS LUQUE,<br>Plaintiffs,<br>-against-<br>GREENPOINT SCRAP METAL, INC., LOUIS FELD, individually, and ALAN FRIEDMAN, individually,<br>Defendants. | **Case No.**: 26-cv-07260<br>**COMPLAINT**<br>**JURY TRIAL DEMANDED** |

Plaintiffs LUCIO ALFONSO ESPINOSA ("Plaintiff Espinosa"), MAURICIO GARCIA RAMIREZ ("Plaintiff Garcia Ramirez"), and LEONEL ARMANDO RAMOS LUQUE ("Plaintiff Ramos Luque") (collectively, "Plaintiffs"), by and through their attorneys, JOSEPH & NORINSBERG, LLC, as and for their Complaint against GREENPOINT SCRAP METAL, INC. ("Greenpoint"), LOUIS FELD, individually ("Defendant Feld"), and ALAN FRIEDMAN, individually ("Defendant Friedman") (Defendant Feld and Defendant Friedman are referred to as the “Individual Defendants,” all Defendants are collectively referred to as "Defendants"), allege upon knowledge as to themselves and their own actions, and upon information and belief as to all other matters, as follows:

## NATURE OF THE CASE

1. This is a civil action for damages and equitable relief based upon willful violations that the Defendants committed of Plaintiffs' rights guaranteed to them by: (i) the overtime provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(a); (ii) the overtime provisions of the New York Labor Law ("NYLL"), NYLL §§ 650 et seq. and 663, and N.Y. Comp. Codes R. & Regs. ("NYCRR") tit. 12, § 142-2.2; (iii) the minimum wage provisions of the NYLL,

NYLL §§ 652 and 663, and 12 NYCRR § 142-2.1; (iv) the NYLL's requirement that employees receive one hour's pay at the minimum wage rate for any day in which the spread of hours exceeds ten, NYLL § 652 and 12 NYCRR § 142-2.4; (v) the NYLL's requirement that employers furnish employees with wage statements containing specific categories of accurate information on each payday, NYLL § 195(3); (vi) as to Plaintiffs Garcia Ramirez and Ramos Luque, the NYLL's requirement that employers furnish employees with a wage notice at hire containing specific categories of accurate information, NYLL § 195(1); (vii) the equal pay provisions of the NYLL, NYLL § 194, which prohibit an employer from paying employees less because of their membership in a protected class, including citizenship or immigration status; (viii) the anti-discrimination and aiding-and-abetting provisions of the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code §§ 8-107(1)(a) and 8-107(6); (ix) the anti-discrimination and aiding-and-abetting provisions of the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 296(1)(a), 296(1)(h), and 296(6); and (x) any other claim(s) that can be inferred from the facts set forth herein.

## PRELIMINARY STATEMENT

2. The burn on Plaintiff Ramos Luque's foot looked terrible. When he told the two men who own Greenpoint — Defendants Louis Feld and Alan Friedman — what had happened to him at work, they did not send him home. They did not send him to a doctor. They did not give him any time off. They told him, in words or substance, that it was not that bad, that he did not have papers anyway, and to keep working. The Individual Defendants were telling Plaintiff Ramos Luque exactly what they believe a worker they regard as undocumented is worth.

3. Defendants' contempt was no slip of the tongue. Every worker in Defendants' Brooklyn scrap yard is Hispanic. When one of them drops something or does something wrong,

Defendant Feld's response, in words or substance, is "How many more Mexicans do we need" or "I don't want anymore Mexicans working here." The refrain is not the product of one bad afternoon. It is how Defendants run their business.

4. Defendants ignore applicable laws because they believe their employees are worthless and powerless. When Plaintiffs Garcia Ramirez and Ramos Luque asked for raises, the owners' answers turned on documentation. The owners told Plaintiff Ramos Luque, in words or substance, "you are undocumented and we cannot give you a raise" when he asked. Defendant Feld told Plaintiff Garcia Ramirez, in words or substance, that business was slow and that he was not documented. Defendant Feld also told him, in words or substance, that he would pay him according to the law if he were documented — but that, because he was not, there would be no raise for him. Defendant Feld knows what the law requires, and has decided that it does not apply to the men he regards as undocumented. Defendant Feld has even stripped the names from the uniforms of the workers Defendants regard as undocumented, who were assigned numbers instead, while the workers Defendants regard as documented kept their names.

5. Plaintiff Ramos Luque has a coworker — Hispanic, from Mexico — who is paid a lot more because Defendants regard him as documented. The two men share an ethnic background, and Plaintiff Ramos Luque does the coworker's work whenever he is away. What separates them is how Defendants regard each man's immigration status.

6. Defendants have routinely ignored their obligations to pay their workers. All three Plaintiffs — including Plaintiff Espinosa, a Mexican lead hand — work fifty-five or more scheduled hours a week, sorting, torching, sawing, stripping, and baling metal; Plaintiff Ramos Luque spends six to eight hours of each day cutting iron and aluminum under the sun. Defendants pay each of them a flat weekly sum in cash — in Plaintiff Espinosa's case, primarily in cash. There

is no time clock. There is no pay stub. There is no wage notice. And there is no overtime, because, as Defendants have told their workers in words or substance, the company does not pay it.

7. When Plaintiff Ramos Luque was injured handling a car battery, Defendants' prescription was saltwater for the swelling and an order to get back to work. His foot remained injured for three months. He never saw a doctor: he was afraid of retaliation, he could not miss work, and he had rent to pay. That is the workplace Defendants have built — one in which the men Defendants regard as undocumented learn, in word and in deed, that neither their wages nor their wounds merit Defendants' concern.

8. Plaintiffs bring this action to hold Defendants accountable. By this Complaint, they assert claims for unpaid overtime under the FLSA and the NYLL; unpaid minimum wage, unpaid spread-of-hours pay, and wage notice and wage statement violations under the NYLL; unequal pay on the basis of citizenship or immigration status under NYLL § 194; discrimination on the basis of immigration or citizenship status and national origin, including a hostile work environment, under the NYCHRL and the NYSHRL; and aiding and abetting that discrimination. They seek every dollar of wages Defendants withheld; liquidated and statutory damages; compensatory damages for the humiliation and emotional distress Defendants inflicted and continue to inflict; and punitive damages in an amount sufficient to make plain — to Defendants and to every employer like them — that in New York, a worker's wages and dignity do not rise or fall with his employer's view of his immigration status.

## JURISDICTION AND VENUE

9. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, as this action arises under 29 U.S.C. § 201, et seq. The supplemental jurisdiction of the Court is invoked pursuant to 28 U.S.C. § 1367 over all claims arising under New York law.

10. Venue is appropriate in this court pursuant to 28 U.S.C. § 1391(b)(1) and/or (b)(2), as one or more of the Defendants reside within this judicial district, and as a substantial part of the events or omissions giving rise to the claims for relief occurred in this judicial district.

11. Within ten days of filing this Complaint, Plaintiffs will serve a copy of this Complaint upon the New York City Commission on Human Rights and the Corporation Counsel of the City of New York, pursuant to N.Y.C. Admin. Code § 8-502(c).

## PARTIES

12. At all relevant times, Plaintiff Espinosa worked for Defendants in New York, and was an "employee" entitled to the protections as defined in the FLSA, NYLL, and the NYCRR. Plaintiff Espinosa resides in Brooklyn, New York.

13. At all relevant times, Plaintiff Garcia Ramirez worked for Defendants in New York, and was an "employee" entitled to the protections as defined in the FLSA, NYLL, and the NYCRR. Plaintiff Garcia Ramirez resides in Brooklyn, New York.

14. At all relevant times, Plaintiff Ramos Luque worked for Defendants in New York, and was an "employee" entitled to the protections as defined in the FLSA, NYLL, and the NYCRR. Plaintiff Ramos Luque resides in Brooklyn, New York.

15. Plaintiffs Espinosa and Garcia Ramirez are of Mexican national origin. Plaintiff Ramos Luque is of Honduran national origin. Spanish is the primary language of each Plaintiff.

16. At all relevant times, each Plaintiff was an "employee" and a "person" entitled to the protections of the NYSHRL and the NYCHRL.

17. Upon information and belief, Greenpoint is a domestic business corporation organized under the laws of New York, formed on or about September 16, 1993, with a principal place of business located at 304 Greenpoint Ave, Brooklyn, NY 11222.

18. Greenpoint operates its scrap metal yard at its principal place of business. At that yard, Greenpoint buys scrap of all types from walk-in customers, including car batteries, compressors, pipes, lead cables, copper wires, etc. Greenpoint's workers disassemble machines, collect and sort metal at the yard.

19. Greenpoint's workers sort and clean metal, strip copper cable, disassemble machines and air conditioners, cut metal with a torch and a disc saw, and bale the processed metal.

20. Greenpoint employs approximately eight employees, all of whom work a single shift and all of whom are Hispanic.

21. Defendant Feld is one of the two owners of Greenpoint. Upon information and belief, Defendant Feld is Greenpoint's Chief Executive Officer and/or President.

22. Defendant Friedman is the other of the two owners of Greenpoint. Upon information and belief, Defendant Friedman is Greenpoint's Vice President.

23. The Individual Defendants have the power to set Plaintiffs' pay. Both of the Individual Defendants are involved in setting the rate and method of pay for Greenpoint's workers. Both of the Individual Defendants have said, on multiple occasions, that Greenpoint does not pay overtime.

24. Any request by a Greenpoint employee for a raise or for money must be brought to both Individual Defendants. Defendant Friedman usually tells the employees, in words or substance, "okay" — but the employees must then obtain Defendant Feld's approval.

25. In July 2026, Plaintiff Espinosa asked both Individual Defendants for a raise. They did not respond.

26. Defendant Feld refused Plaintiff Garcia Ramirez's requests for a raise, and Defendants Feld and Friedman responded to Plaintiff Ramos Luque's April 2025 request for a raise, as alleged below.

27. Both Individual Defendants direct and control the Plaintiffs and other workers at Greenpoint. For example, the Individual Defendants tell the Plaintiffs that they must serve customers who arrive after 5:00 PM.

28. Plaintiff Espinosa relays the owners' morning instructions to Greenpoint's crew. Plaintiff Espinosa does not have the power to hire, fire, set rates or methods of pay or otherwise manage Greenpoint's workers. That authority is exclusively held by the Individual Defendants.

29. The Individual Defendants personally directed Plaintiff Ramos Luque to return to work after each of the workplace injuries alleged below.

30. Both Individual Defendants have the power to hire and fire employees of Greenpoint. Both Individual Defendants have the power to set Plaintiffs' work schedules and determine their rates and method of pay. Both Individual Defendants have decided to operate their business without complying with applicable labor laws, including deciding to disregard their obligation to pay their workers overtime.

31. Plaintiff Espinosa, although Greenpoint's lead hand, has no power to hire, fire, set schedules, set pay, or set prices.

32. Accordingly, at all relevant times, each of the Individual Defendants was Plaintiffs' "employer" within the meaning and the intent of the FLSA and the NYLL.

33. At all relevant times, Greenpoint was Plaintiffs' "employer" within the meaning of the NYSHRL and the NYCHRL. Defendants Feld and Friedman, as Greenpoint's owners, are individually liable under N.Y.C. Admin. Code § 8-107(1)(a), whose prohibitions reach an

"employer or an employee or agent thereof" alike, for their own discriminatory conduct, and under N.Y.C. Admin. Code § 8-107(6) and N.Y. Exec. Law § 296(6) for aiding and abetting the discriminatory conduct alleged herein.

34. Upon information and belief, at all times relevant, Greenpoint was and is an enterprise engaged in interstate commerce in that Greenpoint (i) has had two or more employees who handle, sell, and otherwise work with goods that have been moved in or produced for interstate commerce, including scrap such as car batteries, motors, and air conditioners; and (ii) has had annual gross volume of sales of not less than $500,000.00. This status subjects Greenpoint to the FLSA's overtime requirements as an enterprise.

35. By way of one example, upon information and belief, the metal that Plaintiffs process and bale is sold to buyers and carried away from Greenpoint's yard by out-of-state trucks.

36. Accordingly, Greenpoint was and is an employer of Plaintiffs within the meaning of the FLSA, NYLL, and NYCRR.

## BACKGROUND FACTS

### *Defendants Work Plaintiffs Fifty-Five Hours or More a Week for a Flat Cash Sum, Without Any Record of Their Hours, and Refuse to Pay Overtime*

37. Plaintiffs are three current employees of Defendants' Brooklyn scrap yard, and each remains employed by Defendants today.

38. Defendants pay each Plaintiff a flat weekly sum, in cash, while scheduling fifty-five to sixty hours of work.

39. Plaintiffs are aware of no record of their hours. Greenpoint has no punch clock, no sign-in, and no clock-in/clock-out system of any kind and if the owner keeps any record of Plaintiffs' time, it is not visible to the workers.

40. Plaintiffs receive no pay stub, no wage statement, and no wage notice from Defendants.

41. Defendants allow Plaintiffs a thirty-minute lunch and a fifteen-minute coffee break. The Individual Defendants, however, routinely interrupt lunch to have workers serve customers, and only afterward lets them finish eating.

42. Defendants' flat weekly pay never included any overtime premium for the hours each Plaintiff worked beyond forty in a workweek.

43. Defendants' refusal to pay overtime was not an oversight. The Individual Defendants have stated to the Plaintiffs, on multiple occasions, that the company does not pay overtime.

*Plaintiff Espinosa*

44. Defendants have employed Plaintiff Espinosa since approximately September 1993, and Plaintiff Espinosa remains employed by Defendants today.

45. Plaintiff Espinosa is Greenpoint's lead hand — the "encargado del personal" — and sorts and cleans metal, strips copper cable, disassembles machines, feeds the baler, serves customers, relays the owners' morning instructions to the crew, and explains the job to applicants.

46. Plaintiff Espinosa sorts, processes, and recycles discarded metal materials, and operates Defendants' machinery, including machinery used to cut metal.

47. Plaintiff Espinosa's regular schedule is Monday through Friday, 7:00 AM to 5:00 PM, and Saturday, 8:00 AM to 1:00 PM — ten hours each weekday and fifty-five scheduled hours each week before breaks. Defendants provide Plaintiff Espinosa two weeks of paid vacation and one week of paid sick leave each year.

48. Plaintiff Espinosa receives a morning coffee break of approximately fifteen minutes and a lunch break of approximately thirty minutes. Plaintiff Espinosa's breaks may be interrupted if a customer arrives and he must assist the customer.

49. Plaintiff Espinosa routinely works between 50 and 55 hours each week.

50. Plaintiff Espinosa is paid $865 per week, primarily in cash. In or about 2020, Defendants paid Plaintiff Espinosa approximately $650 per week, which increased that year to approximately $750 per week; Defendants paid Plaintiff Espinosa $750 per week in 2021 and 2022; and Defendants have paid Plaintiff Espinosa $865 per week since in or about 2023.

51. Defendants have never paid Plaintiff Espinosa an overtime premium for his hours over forty.

52. Plaintiff Espinosa's flat weekly pay, divided by the hours he worked, fell below the New York City minimum wage in at least some weeks. By way of example, during the weeks Plaintiff Espinosa worked fifty-five hours in a week, $865 divided by fifty-five hours is approximately $15.73 per hour — below the $16.00 minimum wage in effect in 2024, the $16.50 minimum wage in effect in 2025, and the $17.00 minimum wage in effect in 2026.

53. Defendants also, at intervals of one to two months, present Plaintiff Espinosa with a check for approximately $465 bearing Greenpoint's name. Plaintiff Espinosa signs those checks at the direction of the Individual Defendants but he does not receive the proceeds of the checks.

54. Plaintiff Espinosa suffered a concrete injury in fact from Defendants' failure to furnish him wage statements. Plaintiff Espinosa receives no statement showing his rate of pay or the hours he works. As a result, Plaintiff Espinosa had no document from which he could see that his flat weekly pay included no overtime premium for his hours over forty.

55. Plaintiff Espinosa was deprived of the overtime wages he had earned and of the time-value of that money.

*Plaintiff Garcia Ramirez*

56. Defendants have employed Plaintiff Garcia Ramirez since approximately 2016, when Defendants started him at $430 per week. Plaintiff Garcia Ramirez remains employed by Defendants today.

57. Plaintiff Garcia Ramirez is a torch operator. Plaintiff Garcia Ramirez cuts and disassembles machines and air conditioners, performs disassembly at the front table, and unloads customers' vehicles.

58. Plaintiff Garcia Ramirez works Monday through Friday from approximately 6:15 or 6:20 AM to 5:00 PM, and Saturday from approximately 7:15 or 7:20 AM to 1:00 PM, arriving thirty to forty minutes before his coworkers — approximately fifty-nine and one-half scheduled hours each week.

59. Plaintiff Garcia Ramirez's week is long even without his early arrival: measured from his coworkers' 7:00 AM weekday start and 8:00 AM Saturday start, Plaintiff Garcia Ramirez's scheduled week is fifty-five hours before breaks.

60. Defendants paid Plaintiff Garcia Ramirez approximately $675 per week in 2020 and 2021; approximately $700 to $710 per week from 2022 through 2024; and $750 per week beginning in or about 2025, with no raise since.

61. Defendants pay Plaintiff Garcia Ramirez in cash only (bound with a rubber band), with no receipt and no document of any kind, ever.

62. Plaintiff Garcia Ramirez has asked both Individual Defendants for raises on multiple occasions. Those requests have been rejected. Defendant Feld has refused Plaintiff Garcia Ramirez’s requests for raises saying, among other things, that he is undocumented.

63. Defendants have never paid Plaintiff Garcia Ramirez an overtime premium for his hours over forty.

64. Plaintiff Garcia Ramirez's flat weekly pay, divided by his hours, fell below the New York City minimum wage in each workweek from 2020 through 2026 in which he worked his regular schedule. Even measured against a fifty-five-hour week, $750 divided by fifty-five hours is approximately $13.64 per hour — below the $16.50 minimum wage in effect in 2025 and the $17.00 minimum wage in effect in 2026 — and $675 divided by fifty-five hours is approximately $12.27 per hour, below the $15.00 minimum wage in effect in 2020 and 2021.

65. Plaintiff Garcia Ramirez's weekday workday runs from approximately 6:15 AM to 5:00 PM — a spread of approximately ten hours and forty-five minutes.

66. Plaintiff Garcia Ramirez suffered a concrete injury in fact from Defendants' failure to furnish him a wage notice and wage statements. Plaintiff Garcia Ramirez asked why he was not paid overtime and was told, in words or substance, that the company did not pay overtime. Defendants have never given Plaintiff Garcia Ramirez any document — no written notice of his regular and overtime rates, no receipt, and no statement of the hours he worked — and pay him in cash bound with a rubber band. As a result, Plaintiff Garcia Ramirez had no document from which he could see that his pay included no overtime premium and fell below the minimum wage.

67. Plaintiff Garcia Ramirez was deprived of the overtime and minimum wages he had earned and of the time-value of that money.

*Plaintiff Ramos Luque*

68. Defendants have employed Plaintiff Ramos Luque since approximately May 2017, and Plaintiff Ramos Luque remains employed by Defendants today.

69. Plaintiff Ramos Luque is a yard laborer. Plaintiff Ramos Luque unloads iron from customers' vehicles, sorts metal, and cuts iron and aluminum with a gasoline-powered disc saw.

70. Plaintiff Ramos Luque's regular schedule is Monday through Friday, 7:00 AM to 5:00 PM, and Saturday, 8:00 AM to 1:00 PM — fifty-five scheduled hours each week before breaks. Two to three times per week, at the bosses' direction, Plaintiff Ramos Luque stays up to approximately thirty minutes past 5:00 PM to serve late-arriving customers.

71. Defendants paid Plaintiff Ramos Luque $525 per week in 2020 and 2021; $550 per week in 2022; approximately $575 per week in 2023; approximately $600 per week in 2024; $675 per week in 2025; and $725 per week in 2026.

72. Defendants pay Plaintiff Ramos Luque in cash only, always.

73. Defendants have never paid Plaintiff Ramos Luque an overtime premium for his hours over forty.

74. Plaintiff Ramos Luque's flat weekly pay, divided by his hours, fell below the New York City minimum wage in each workweek from 2020 through 2026 in which he worked his regular schedule. By way of example, $725 divided by fifty-five hours is approximately $13.18 per hour — below the $17.00 minimum wage in effect in 2026 — and $525 divided by fifty-five hours is approximately $9.55 per hour, below the $15.00 minimum wage in effect in 2020 and 2021.

75. Plaintiff Ramos Luque's workday, on the two to three days each week that he stays past 5:00 PM, runs from 7:00 AM until as late as approximately 5:30 PM — a spread of more than ten hours.

76. Plaintiff Ramos Luque suffered a concrete injury in fact from Defendants' failure to furnish him a wage notice and wage statements. Plaintiff Ramos Luque receives no written notice of his regular and overtime rates and no statement showing the hours he works, including his late stays two to three times a week. As a result, Plaintiff Ramos Luque had no document from which he could see that his pay included no overtime premium and fell below the minimum wage.

77. Plaintiff Ramos Luque was deprived of the overtime and minimum wages he had earned and of the time-value of that money.

*Defendant Feld Makes Recurring Comments About "Mexicans" in an All-Hispanic Workplace*

78. Defendants' employees are all Hispanic.

79. Defendant Feld, when an employee drops something or does something wrong, makes comments such as, in words or substance, "How many more Mexicans do we need" and "I don't want anymore Mexicans working here" in a workplace whose employees are all Hispanic.

80. Defendant Feld's comments are recurring. Defendant Feld made such a comment most recently in or about late September 2026.

81. Defendant Feld consistently makes negative comments about the race of Greenpoint's employees.

82. Plaintiff Espinosa, who is of Mexican national origin, works in the all-Hispanic workplace in which Defendant Feld makes his comments about "Mexicans."

*Defendants Deny Raises to the Workers They Regard as Undocumented*

83. Defendant Feld's approval is required for any raise: as alleged above, a Greenpoint employee seeking a raise must bring the request to both Defendant Feld and Defendant Friedman, and the raise requires Defendant Feld's approval.

84. Defendant Feld's response to Plaintiff Garcia Ramirez's requests for a raise was, in words or substance, that Defendants would not give the workers a raise because they were not documented.

85. Plaintiff Garcia Ramirez asked for a raise right before a scheduled vacation. Defendant Feld's last stated reason for refusing Plaintiff Garcia Ramirez a raise was, in words or substance, that business was slow and that Plaintiff Garcia Ramirez was not documented. Defendant Feld's most recent comment that Plaintiff Garcia Ramirez was not documented was made in or about mid-October 2023.

86. Defendant Feld told Plaintiff Garcia Ramirez, in words or substance, that he would pay him according to the law if he were documented, but that, because he was not, there would be no raise for him.

87. Plaintiff Ramos Luque spoke with Defendants Feld and Friedman about a raise in April 2025, shortly before his customary May vacation.

88. Defendants Feld and Friedman responded, in words or substance, "you are undocumented and we cannot give you a raise."

89. Defendant Feld believes and regards Plaintiff Garcia Ramirez to be undocumented, and has conditioned Plaintiff Garcia Ramirez's raises on that belief. Defendants Feld and Friedman believe and regard Plaintiff Ramos Luque to be undocumented, as their response to his April 2025 request for a raise shows.

90. Defendant Feld's own words — that he would pay Plaintiff Garcia Ramirez according to the law only if he were documented — confirm that Defendant Feld knows what the law requires and has chosen, deliberately, not to comply with the law.

*Defendants Pay a Coworker Significantly More for Work That is Similar to the Work the Plaintiffs Perform*

91. Plaintiff Ramos Luque has a coworker at Greenpoint who is Hispanic and from Mexico.

92. Plaintiff Ramos Luque has to cover the coworker's work when that coworker goes on vacation.

93. Plaintiff Ramos Luque's coworker gets paid significantly more than Plaintiff Ramos Luque. Plaintiff Ramos Luque believes this coworker is paid $1,000 per week.

94. Plaintiff Ramos Luque understands that Defendants pay that coworker significantly more than Plaintiff Ramos Luque because Defendants regard the coworker as documented and regard Plaintiff Ramos Luque as undocumented. The coworker, like Plaintiff Ramos Luque, is Hispanic; what distinguishes the two men is how Defendants regard each man's immigration status.

95. Plaintiff Ramos Luque and the coworker work at the same establishment: Greenpoint's yard.

96. Defendants have paid Plaintiff Ramos Luque approximately $550 to $725 per week since December 23, 2022.

97. Defendant Feld has said to Plaintiff Ramos Luque that his colleague is paid more because he is documented.

*Defendants Dismissed Plaintiff Ramos Luque's Workplace Injuries and Ordered Him Back to Work*

98. Plaintiff Ramos Luque was burned on his foot at work during the summer of 2025. Plaintiff Ramos Luque photographed the injury.

99. Plaintiff Ramos Luque told both Defendant Feld and Defendant Friedman about the burn.

100. Defendants Feld and Friedman told Plaintiff Ramos Luque, in words or substance, that the burn was not that bad, that he did not have papers anyway, and to continue working.

101. Defendants did not send Plaintiff Ramos Luque home. Defendants did not send Plaintiff Ramos Luque to a doctor. Defendants did not give Plaintiff Ramos Luque time off or anything else.

102. A coworker named Luis, who was from Ecuador and was regarded the Individual Defendants as undocumented, sustained serious cuts on his fingers while working at Greenpoint. The Individual Defendants terminated his employment because he was injured and they regarded him as undocumented.

103. Plaintiff Ramos Luque's foot was injured at work in 2026 because a car battery fell on his foot.

104. Defendants Feld and Friedman told Plaintiff Ramos Luque to put saltwater on his foot to help with the swelling, and told him to get back to work.

105. Plaintiff Ramos Luque's foot remained injured for three months.

106. Plaintiff Ramos Luque never went to a doctor: Plaintiff Ramos Luque was afraid of retaliation by the Individual Defendants, could not miss work, and needed to pay his rent.

107. Defendants dismissed Plaintiff Ramos Luque's workplace injuries and sent him back to work because they regard him as undocumented — as Defendants themselves told him, in words or substance, when they said that he did not have "papers" anyway.

*Defendants Strip the Names from the Uniforms of the Workers They Regard as Undocumented and Assign Them Numbers*

108. Greenpoint's workers wear uniforms at work. Until the events alleged below, those uniforms displayed the workers' names.

109. In or about early 2025, Defendant Feld took the names off the uniforms of the workers Defendants regard as undocumented, including Plaintiffs Garcia Ramirez and Ramos Luque. Each of those workers was assigned a number instead.

110. Defendants allowed the workers they regard as documented to keep their names on their uniforms. Plaintiff Espinosa kept his name on his uniform.

111. Plaintiff Garcia Ramirez felt that Defendants were treating him and the other workers whose names had been removed like prisoners, and that Defendants were discriminating against them.

112. Defendants also instructed Plaintiffs Garcia Ramirez and Ramos Luque, and other workers, that if Immigration and Customs Enforcement ("ICE") or any other deportation agency or agent came to the workplace, they were to say that they had just started working at Greenpoint or had been working there for only a few days.

113. Plaintiffs Garcia Ramirez and Ramos Luque have worked for Defendants since approximately 2016 and May 2017, respectively. Defendants were, in substance, instructing them to misstate the length of their employment to immigration authorities.

114. Defendants removed Plaintiffs Garcia Ramirez's and Ramos Luque's names from their uniforms, and assigned them numbers, because Defendants regard them as undocumented. Defendants' instruction about what to tell immigration agents reflects the same belief.

**FIRST CLAIM FOR RELIEF AGAINST ALL DEFENDANTS**

*Unpaid Overtime under the FLSA*

115. Plaintiffs repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

116. 29 U.S.C. § 207(a) requires employers to compensate their employees at a rate not less than one and one-half times their regular rate of pay for all hours worked exceeding forty in a workweek.

117. As described above, Defendants are "employers" within the meaning of the FLSA, while Plaintiffs are "employees" within the meaning of the FLSA. Greenpoint is an enterprise engaged in commerce within the meaning of 29 U.S.C. § 203(s)(1)(A).

118. Plaintiffs worked in excess of forty hours per week, yet Defendants failed to compensate Plaintiffs in accordance with the FLSA's overtime provisions, paying each Plaintiff a flat weekly sum that included no overtime premium for any hour worked beyond forty.

119. Defendants willfully violated the FLSA. Defendants knowingly refused to pay overtime — telling their workers, in words or substance, that the company does not pay it — and Plaintiffs are aware of no record of their hours. Defendants made no good-faith effort to comply with the FLSA, entitling Plaintiffs to the three-year limitations period of 29 U.S.C. § 255(a).

120. Plaintiffs are entitled to overtime pay for all hours worked per week in excess of forty at the rate of one and one-half times their respective regular rates of pay.

121. Plaintiffs are also entitled to liquidated damages, interest, attorneys' fees, and costs for Defendants' violations of the FLSA's overtime provisions, pursuant to 29 U.S.C. § 216(b).

**SECOND CLAIM FOR RELIEF AGAINST ALL DEFENDANTS**

*Unpaid Overtime under the NYLL and the NYCRR*

122. Plaintiffs repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

123. NYLL §§ 650 et seq. and 663, and 12 NYCRR § 142-2.2, require employers to compensate their employees at a rate not less than one and one-half times their regular rate of pay for all hours worked exceeding forty in a workweek.

124. Defendants are "employers" within the meaning of the NYLL and the NYCRR, while Plaintiffs are "employees" within the meaning of the NYLL and the NYCRR.

125. Plaintiffs worked in excess of forty hours in a workweek, yet Defendants failed to compensate them in accordance with the NYLL's and the NYCRR's overtime provisions.

126. Absent an agreement that the flat weekly pay was to compensate hours beyond forty, the flat weekly pay is presumed to compensate only the first forty hours of each workweek, and each Plaintiff's regular rate is the weekly pay divided by forty; Defendants therefore owe each Plaintiff one and one-half times that regular rate for every hour he worked beyond forty.

127. In the alternative, each Plaintiff's regular rate is the weekly pay divided by the total hours worked, and Defendants owe the overtime premium for every hour over forty.

128. Defendants' violations of the NYLL's and the NYCRR's overtime provisions were willful.

129. Plaintiffs are entitled to overtime pay for all hours worked per week in excess of forty at the rate of one and one-half times their regular rate of pay, and to liquidated damages,

interest, attorneys' fees, and costs for Defendants' violations of the NYLL's and the NYCRR's overtime provisions, pursuant to NYLL § 663.

## THIRD CLAIM FOR RELIEF AGAINST ALL DEFENDANTS

*Unpaid Minimum Wage under the NYLL and the NYCRR*

130. Plaintiffs repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

131. NYLL § 652 and 12 NYCRR § 142-2.1 require employers to pay their employees not less than the applicable minimum hourly wage for each hour worked.

132. The minimum wage applicable to employers in New York City was $15.00 per hour in 2020 through 2023, $16.00 per hour in 2024, $16.50 per hour in 2025, and $17.00 per hour in 2026.

133. Defendants are "employers" within the meaning of the NYLL and the NYCRR, while Plaintiffs are "employees" within the meaning of the NYLL and the NYCRR.

134. As described above, Defendants paid Plaintiffs Garcia Ramirez and Ramos Luque a flat weekly sum that, divided by their hours worked, fell below the applicable minimum wage in each workweek from 2020 through 2026 in which they worked their regular schedules, and paid Plaintiff Espinosa a flat weekly sum that, divided by his hours worked, fell below the applicable minimum wage in at least some weeks.

135. Defendants' violations of the NYLL's and the NYCRR's minimum wage provisions were willful.

136. Plaintiffs are entitled to recover all unpaid minimum wages, liquidated damages, interest, attorneys' fees, and costs for Defendants' violations of the NYLL's and the NYCRR's minimum wage provisions, pursuant to NYLL § 663.

## FOURTH CLAIM FOR RELIEF AGAINST ALL DEFENDANTS

*Failure to Pay Spread-of-Hours Pay in Violation of the NYCRR*

137. Plaintiffs repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

138. N.Y. Lab. Law § 652 and 12 NYCRR § 142-2.4 provide that an employee shall receive one hour's pay at the minimum hourly wage rate for any day worked in which the spread of hours exceeds ten hours.

139. As described above, Defendants are "employers" within the meaning of the NYLL and NYCRR, while Plaintiffs are employees within the meaning of the NYLL and NYCRR.

140. As described above, both Plaintiff Garcia Ramirez and Plaintiff Ramos Luque regularly worked days on which his spread of hours exceeded ten hours two to three times per week.

141. Defendants failed to provide Plaintiffs with spread-of-hours pay when their workday exceeded ten hours from start to finish.

142. Plaintiffs are entitled to this extra hour of pay, at the minimum wage rate, for all days worked in excess of ten hours, and are also entitled to liquidated damages, interest, and attorneys' fees for Defendants' failure to pay the required spread-of-hours pay.

## FIFTH CLAIM FOR RELIEF AGAINST ALL DEFENDANTS

*Failure to Furnish Proper Wage Statements in Violation of the NYLL*

143. Plaintiffs repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

144. N.Y. Lab. Law § 195(3) requires that employers furnish employees with wage statements containing accurate, specifically enumerated criteria on each occasion when the employer pays wages to the employee.

145. Defendants are "employers" within the meaning of the NYLL, while Plaintiffs are "employees" within the meaning of the NYLL and the NYCRR.

146. As described above, Defendants, on each payday, failed to furnish Plaintiffs with any wage statement at all, let alone one containing the criteria required under the NYLL, including Plaintiffs' rates of pay and their regular and overtime hours worked.

147. As described above, each Plaintiff suffered a concrete injury in fact from Defendants' failure: without any statement of his hours and rates, each Plaintiff had no document from which he could see that Defendants failed to pay him the overtime premium the law requires, and each Plaintiff was deprived of wages he had earned.

148. Pursuant to NYLL § 198(1-d), Defendants are liable to each Plaintiff in the amount of $250.00 for each workday that the violations occurred, up to a statutory cap of $5,000.00 per Plaintiff.

## SIXTH CLAIM FOR RELIEF AGAINST ALL DEFENDANTS

*Failure to Furnish Proper Wage Notice in Violation of the NYLL (On Behalf of Plaintiffs Garcia Ramirez and Ramos Luque)*

149. Plaintiffs Garcia Ramirez and Ramos Luque repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

150. NYLL § 195(1) requires that employers provide employees with a wage notice at the time of hire containing accurate, specifically enumerated criteria, including the employee's regular and overtime rates of pay, in English and in the employee's primary language.

151. As described above, Defendants are "employers" within the meaning of the NYLL, while Plaintiffs Garcia Ramirez and Ramos Luque are "employees" within the meaning of the NYLL.

152. Defendants failed to provide Plaintiffs Garcia Ramirez and Ramos Luque with the wage notice NYLL § 195(1) requires.

153. Plaintiff Garcia Ramirez has never received any document of any kind from Defendants, and neither Plaintiff Garcia Ramirez nor Plaintiff Ramos Luque receives a wage notice from Defendants today. Defendants' violation therefore continued on every workday of Plaintiffs Garcia Ramirez's and Ramos Luque's employment, including every workday within the six years preceding the filing of this action.

154. As described above, each of Plaintiffs Garcia Ramirez and Ramos Luque suffered a concrete injury in fact from Defendants' failure. Plaintiff Garcia Ramirez, never told in writing his regular rate or his overtime rate, had no document from which he could see that his flat weekly pay omitted the overtime premium the law requires and fell below the minimum wage, and was deprived of wages he had earned. Plaintiff Ramos Luque, never told in writing his regular rate or his overtime rate, had no document from which he could see that his flat weekly pay — including for his late stays past 5:00 PM — omitted the overtime premium the law requires and fell below the minimum wage, and was deprived of wages he had earned.

155. NYLL § 198(1-b) provides that an employee who is not provided the notice required by NYLL § 195(1) within ten business days of his first day of employment may recover damages of fifty dollars "for each work day that the violations occurred or continue to occur" up to a total of five thousand dollars, together with costs and reasonable attorneys' fees.

156. Pursuant to NYLL § 198(1-b), Defendants are liable to each of Plaintiffs Garcia Ramirez and Ramos Luque in the amount of $50.00 for each workday that the violations occurred or continued to occur, up to a statutory cap of $5,000.00 per Plaintiff, together with costs and reasonable attorneys' fees.

## SEVENTH CLAIM FOR RELIEF AGAINST ALL DEFENDANTS

*Unequal Pay Based on Citizenship or Immigration Status in Violation of NYLL § 194 (On Behalf of Plaintiffs Garcia Ramirez and Ramos Luque)*

157. Plaintiffs Garcia Ramirez and Ramos Luque repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

158. NYLL § 194 prohibits an employer from paying an "employee with status within" a protected class at a rate less than the rate at which the employer pays employees without such status for equal work, or for "substantially similar work" in light of the "skill, effort, and responsibility" it requires, performed in the same establishment. NYLL § 194(1).

159. Under NYLL § 194(2), the protected classes covered by § 194 include the classes of employees protected under N.Y. Exec. Law § 296(1)(a). Since December 23, 2022, N.Y. Exec. Law § 296(1)(a) has prohibited discrimination in compensation because of "citizenship or immigration status" — which N.Y. Exec. Law § 292(41) defines to mean "the citizenship of any person or the immigration status of any person who is not a citizen of the United States" — and citizenship or immigration status is therefore a protected class under NYLL § 194.

160. Defendants are "employers" within the meaning of the NYLL, while Plaintiffs Garcia Ramirez and Ramos Luque are "employees" within the meaning of the NYLL.

161. As described herein, Defendant Feld believes Plaintiff Garcia Ramirez to be undocumented and withheld his raises because of that belief, and Defendants Feld and Friedman

believe Plaintiff Ramos Luque to be undocumented and responded to his April 2025 request for a raise on that basis — each because of Defendants' belief about Plaintiffs Garcia Ramirez's and Ramos Luque's citizenship or immigration status. Plaintiff Ramos Luque's coworker is paid significantly more because Defendants regard him as documented.

162. Defendants have paid Plaintiff Ramos Luque less than his coworker, whose work Plaintiff Ramos Luque covers when the coworker is away, at the same establishment.

163. Defendants themselves identified the reason they withheld or conditioned raises: Defendant Feld refused Plaintiff Garcia Ramirez's requests for a raise, and Defendants Feld and Friedman responded to Plaintiff Ramos Luque's April 2025 request for a raise, on the stated ground that each was not documented.

164. Defendants' violation of NYLL § 194 was willful. Defendants knowingly and deliberately held Plaintiff Ramos Luque's pay below his coworker's because of Defendants' belief about his citizenship or immigration status, and Defendant Feld acknowledged that he would pay Plaintiff Garcia Ramirez according to the law only if he were documented.

165. Plaintiffs Garcia Ramirez and Ramos Luque are entitled to recover the full amount of their underpayment, liquidated damages of up to three hundred percent of that underpayment for Defendants' willful violation pursuant to NYLL § 198(1-a), interest, attorneys' fees, and costs.

## EIGHTH CLAIM FOR RELIEF AGAINST ALL DEFENDANTS

*Discrimination Based on Actual or Perceived Immigration or Citizenship Status in Violation of the NYCHRL (On Behalf of Plaintiffs Garcia Ramirez and Ramos Luque)*

166. Plaintiffs Garcia Ramirez and Ramos Luque repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

167. The NYCHRL makes it an unlawful discriminatory practice for an "employer or an employee or agent thereof" to discriminate against any person in compensation or in terms, conditions, or privileges of employment because of the "actual or perceived … immigration or citizenship status" of that person. N.Y.C. Admin. Code § 8-107(1)(a)(3).

168. The NYCHRL must be "construed liberally for the accomplishment of the uniquely broad and remedial purposes thereof" under N.Y.C. Admin. Code § 8-130.

169. Greenpoint, through Defendant Feld or Defendants Feld and Friedman, treated Plaintiffs Garcia Ramirez and Ramos Luque less well, in whole or in part because of their actual or perceived immigration or citizenship status, in violation of the NYCHRL, by, among other things: refusing Plaintiff Garcia Ramirez's requests for a raise on the stated ground, in words or substance, that he was not documented; responding to Plaintiff Ramos Luque's request for a raise on the stated ground, in words or substance, that he was undocumented; paying Plaintiff Ramos Luque a lot less than a coworker who, as Plaintiff Ramos Luque understands it, is paid more because Defendants regard him as documented; removing Plaintiffs Garcia Ramirez's and Ramos Luque's names from their uniforms and assigning them numbers instead, while allowing the workers Defendants regard as documented to keep their names; and, as to Plaintiff Ramos Luque, dismissing his burn on the stated ground, in words or substance, that he did not have papers anyway, giving him no time off, and ordering him back to work, and, after his foot was smashed, again ordering him back to work.

170. Defendant Feld personally engaged in this discriminatory conduct, including by his responses to Plaintiff Garcia Ramirez's requests for a raise; by responding, with Defendant Friedman, to Plaintiff Ramos Luque's April 2025 request for a raise; by removing Plaintiffs Garcia

Ramirez's and Ramos Luque's names from their uniforms; and by responding, with Defendant Friedman, to Plaintiff Ramos Luque's burn and foot injury.

171. Defendant Friedman personally engaged in this discriminatory conduct, including by responding, with Defendant Feld, to Plaintiff Ramos Luque's April 2025 request for a raise, and by responding, with Defendant Feld, to Plaintiff Ramos Luque's burn and foot injury.

172. Defendants Feld and Friedman are each liable for their own discriminatory conduct as an "employee or agent thereof" of Greenpoint under N.Y.C. Admin. Code § 8-107(1)(a), and are further liable as aiders and abettors under N.Y.C. Admin. Code § 8-107(6), as alleged in the Twelfth Claim for Relief.

173. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYCHRL, Plaintiffs Garcia Ramirez and Ramos Luque have suffered, and continue to suffer, economic loss, for which they are entitled to an award of monetary damages and other relief.

174. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYCHRL, Plaintiffs Garcia Ramirez and Ramos Luque have suffered, and continue to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which they are entitled to an award of monetary damages and other relief.

175. Defendants' unlawful discriminatory actions constitute malicious, willful, and wanton violations of the NYCHRL, for which Plaintiffs Garcia Ramirez and Ramos Luque are entitled to an award of punitive damages pursuant to N.Y.C. Admin. Code § 8-502(a).

**NINTH CLAIM FOR RELIEF AGAINST ALL DEFENDANTS**

*Discrimination Because of Citizenship or Immigration Status in Violation of the NYSHRL (On Behalf of Plaintiffs Garcia Ramirez and Ramos Luque)*

176. Plaintiffs Garcia Ramirez and Ramos Luque repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

177. Since December 23, 2022, N.Y. Exec. Law § 296(1)(a) has prohibited an employer from discriminating against an individual in compensation or in terms, conditions, or privileges of employment because of "citizenship or immigration status" — which N.Y. Exec. Law § 292(41) defines to mean "the citizenship of any person or the immigration status of any person who is not a citizen of the United States" — and the NYSHRL applies to all employers within the State of New York. N.Y. Exec. Law § 292(5).

178. The NYSHRL is to be construed liberally for the accomplishment of its remedial purposes. N.Y. Exec. Law § 300.

179. Greenpoint, through Defendant Feld or Defendants Feld and Friedman, discriminated against Plaintiffs Garcia Ramirez and Ramos Luque in compensation and in the terms, conditions, and privileges of their employment because of Defendants' belief about Plaintiffs Garcia Ramirez's and Ramos Luque's citizenship or immigration status, in violation of the NYSHRL, by, among other things: refusing Plaintiff Garcia Ramirez's requests for a raise on the stated ground, in words or substance, that he was not documented; responding to Plaintiff Ramos Luque's request for a raise on the stated ground, in words or substance, that he was undocumented; paying Plaintiff Ramos Luque a lot less than a coworker who, as Plaintiff Ramos Luque understands it, is paid more because Defendants regard him as documented; removing Plaintiffs Garcia Ramirez's and Ramos Luque's names from their uniforms and assigning them

numbers instead, while allowing the workers Defendants regard as documented to keep their names; and, as to Plaintiff Ramos Luque, dismissing his burn on the stated ground, in words or substance, that he did not have papers anyway, giving him no time off, and ordering him back to work, and, after his foot was smashed, again ordering him back to work.

180. Defendants Feld and Friedman are liable for this conduct as aiders and abettors under N.Y. Exec. Law § 296(6), as alleged in the Thirteenth Claim for Relief.

181. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYSHRL, Plaintiffs Garcia Ramirez and Ramos Luque have suffered, and continue to suffer, economic loss, for which they are entitled to an award of monetary damages and other relief.

182. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYSHRL, Plaintiffs Garcia Ramirez and Ramos Luque have suffered, and continue to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which they are entitled to an award of monetary damages and other relief.

183. Defendants' unlawful discriminatory actions constitute malicious, willful, and wanton violations of the NYSHRL, for which Plaintiffs Garcia Ramirez and Ramos Luque are entitled to an award of punitive damages pursuant to N.Y. Exec. Law § 297(9).

**TENTH CLAIM FOR RELIEF AGAINST ALL DEFENDANTS**

*Discrimination and Hostile Work Environment Based on Actual or Perceived National Origin in Violation of the NYCHRL*

184. Plaintiffs repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

185. The NYCHRL makes it an unlawful discriminatory practice for an "employer or an employee or agent thereof" to discriminate against any person in compensation or in terms, conditions, or privileges of employment because of the "actual or perceived … national origin" of that person. N.Y.C. Admin. Code § 8-107(1)(a).

186. The NYCHRL must be "construed liberally for the accomplishment of the uniquely broad and remedial purposes thereof" under N.Y.C. Admin. Code § 8-130.

187. Greenpoint, through Defendant Feld, discriminated against Plaintiffs on the basis of their actual or perceived national origin, in violation of the NYCHRL, by creating, fostering, condoning, accepting, ratifying, and/or failing to prevent or remedy a hostile work environment in which Defendant Feld repeatedly made comments such as, in words or substance, "How many more Mexicans do we need" and "I don't want anymore Mexicans working here" in a workplace whose employees — including each Plaintiff — are all Hispanic, and thereby treated Plaintiffs less well because of their actual or perceived national origin.

188. In addition, and in the alternative, Greenpoint treated Plaintiffs Garcia Ramirez and Ramos Luque less well, in whole or in part because of their actual or perceived national origin, including their Hispanic ancestry, by refusing Plaintiff Garcia Ramirez's requests for a raise, by responding to Plaintiff Ramos Luque's April 2025 request for a raise on the stated ground that he

was undocumented, and, as to Plaintiff Ramos Luque, dismissing his workplace injuries and ordering him back to work, as alleged above.

189. Defendant Feld is liable for his own discriminatory conduct, and Defendant Friedman is liable for his own discriminatory conduct, each as an "employee or agent thereof" of Greenpoint under N.Y.C. Admin. Code § 8-107(1)(a); and Defendants Feld and Friedman are further liable as aiders and abettors under N.Y.C. Admin. Code § 8-107(6), as alleged in the Twelfth Claim for Relief.

190. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYCHRL, Plaintiffs have suffered, and continue to suffer, economic loss, for which they are entitled to an award of monetary damages and other relief.

191. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYCHRL, Plaintiffs have suffered, and continue to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which they are entitled to an award of monetary damages and other relief.

192. Defendants' unlawful discriminatory actions and hostile work environment constitute malicious, willful, and wanton violations of the NYCHRL, for which Plaintiffs are entitled to an award of punitive damages pursuant to N.Y.C. Admin. Code § 8-502(a).

## ELEVENTH CLAIM FOR RELIEF AGAINST ALL DEFENDANTS

*Discrimination and Hostile Work Environment Based on National Origin in Violation of the NYSHRL*

193. Plaintiffs repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

194. The NYSHRL prohibits an employer from discriminating against an individual in compensation or in terms, conditions, or privileges of employment because of the individual's national origin — a term that includes "ancestry" — under N.Y. Exec. Law §§ 296(1)(a) and 292(8).

195. As amended in 2019, the NYSHRL further prohibits an employer from subjecting an individual to harassment because of the individual's national origin when such harassment subjects the individual to "inferior terms, conditions or privileges" of employment, regardless of whether such harassment would be considered severe or pervasive. N.Y. Exec. Law § 296(1)(h).

196. The NYSHRL is to be construed liberally for the accomplishment of its remedial purposes. N.Y. Exec. Law § 300.

197. Greenpoint, through Defendant Feld, discriminated against Plaintiffs on the basis of their national origin, including their Hispanic ancestry, in violation of the NYSHRL, by subjecting Plaintiffs to inferior terms, conditions, and privileges of employment through Defendant Feld's repeated comments such as, in words or substance, "How many more Mexicans do we need" and "I don't want anymore Mexicans working here" in a workplace whose employees — including each Plaintiff — are all Hispanic, as alleged above.

198. In addition, and in the alternative, Greenpoint discriminated against Plaintiffs Garcia Ramirez and Ramos Luque in compensation and in the terms, conditions, and privileges of their employment because of their national origin, including their Hispanic ancestry, by refusing Plaintiff Garcia Ramirez's requests for a raise, by responding to Plaintiff Ramos Luque's April 2025 request for a raise on the stated ground that he was undocumented, and, as to Plaintiff Ramos Luque, dismissing his workplace injuries and ordering him back to work, as alleged above.

199. Defendants Feld and Friedman are liable for this conduct as aiders and abettors under N.Y. Exec. Law § 296(6), as alleged in the Thirteenth Claim for Relief.

200. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYSHRL, Plaintiffs have suffered, and continue to suffer, economic loss, for which they are entitled to an award of monetary damages and other relief.

201. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYSHRL, Plaintiffs have suffered, and continue to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which they are entitled to an award of monetary damages and other relief.

202. Defendants' unlawful discriminatory actions and hostile work environment constitute malicious, willful, and wanton violations of the NYSHRL, for which Plaintiffs are entitled to an award of punitive damages pursuant to N.Y. Exec. Law § 297(9).

## TWELFTH CLAIM FOR RELIEF AGAINST DEFENDANTS FELD AND FRIEDMAN

*Aiding and Abetting in Violation of the NYCHRL*

203. Plaintiffs repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

204. N.Y.C. Admin. Code § 8-107(6) makes it "an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter, or to attempt to do so."

205. Defendant Feld knowingly and actually participated in, aided, and abetted the discriminatory conduct alleged above through his own conduct, including his comments about Mexicans; his responses to Plaintiff Garcia Ramirez's requests for a raise; his response, with

Defendant Friedman, to Plaintiff Ramos Luque's April 2025 request for a raise; his removal of Plaintiffs Garcia Ramirez's and Ramos Luque's names from their uniforms; and his responses, with Defendant Friedman, to Plaintiff Ramos Luque's burn and foot injury.

206. Defendant Friedman knowingly and actually participated in, aided, and abetted the discriminatory conduct alleged above through his own conduct, including his response, with Defendant Feld, to Plaintiff Ramos Luque's April 2025 request for a raise; his responses, with Defendant Feld, to Plaintiff Ramos Luque's burn and foot injury; and his practice of telling employees who asked for raises, in words or substance, "okay" while the approval rested with Defendant Feld.

207. As a direct and proximate result of Defendants Feld's and Friedman's unlawful conduct in violation of the NYCHRL, Plaintiffs have suffered, and continue to suffer, economic loss, for which they are entitled to an award of monetary damages and other relief.

208. As a direct and proximate result of Defendants Feld's and Friedman's unlawful conduct in violation of the NYCHRL, Plaintiffs have suffered, and continue to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which they are entitled to an award of monetary damages and other relief.

209. Defendants Feld's and Friedman's unlawful aiding and abetting of discrimination constitutes malicious, willful, and wanton violations of the NYCHRL, for which Plaintiffs are entitled to an award of punitive damages pursuant to N.Y.C. Admin. Code § 8-502(a).

**THIRTEENTH CLAIM FOR RELIEF AGAINST DEFENDANTS FELD AND FRIEDMAN**

*Aiding and Abetting in Violation of the NYSHRL*

210. Plaintiffs repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

211. The NYSHRL makes it an unlawful discriminatory practice for any person to aid, abet, incite, compel, or coerce the doing of any of the acts forbidden under the NYSHRL, or to attempt to do so. N.Y. Exec. Law § 296(6).

212. Defendant Feld knowingly and actually participated in, aided, and abetted the discriminatory conduct alleged above through his own conduct, including his comments about Mexicans; his responses to Plaintiff Garcia Ramirez's requests for a raise; his response, with Defendant Friedman, to Plaintiff Ramos Luque's April 2025 request for a raise; his removal of Plaintiffs Garcia Ramirez's and Ramos Luque's names from their uniforms; and his responses, with Defendant Friedman, to Plaintiff Ramos Luque's burn and foot injury.

213. Defendant Friedman knowingly and actually participated in, aided, and abetted the discriminatory conduct alleged above through his own conduct, including his response, with Defendant Feld, to Plaintiff Ramos Luque's April 2025 request for a raise; his responses, with Defendant Feld, to Plaintiff Ramos Luque's burn and foot injury; and his practice of telling employees who asked for raises, in words or substance, "okay" while the approval rested with Defendant Feld.

214. As a direct and proximate result of Defendants Feld's and Friedman's unlawful conduct in violation of the NYSHRL, Plaintiffs have suffered, and continue to suffer, economic loss, for which they are entitled to an award of monetary damages and other relief.

215. As a direct and proximate result of Defendants Feld's and Friedman's unlawful conduct in violation of the NYSHRL, Plaintiffs have suffered, and continue to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which they are entitled to an award of monetary damages and other relief.

216. Defendants Feld's and Friedman's unlawful aiding and abetting of discrimination constitutes malicious, willful, and wanton violations of the NYSHRL, for which Plaintiffs are entitled to an award of punitive damages pursuant to N.Y. Exec. Law § 297(9).

## **JURY DEMAND**

217. Pursuant to FRCP 38(b), Plaintiffs demand a trial by jury in this action.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs demand judgment against Defendants as follows:

a. A judgment declaring that the practices complained of herein are unlawful and in violation of the aforementioned United States, New York State, and New York City laws;

b. Preliminary and permanent injunctions against Defendants and their officers, owners, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein, including an order restraining Defendants from any retaliation against Plaintiffs for their participation in any form in this litigation;

c. All damages that Plaintiffs have sustained as a result of the Defendants' conduct, including all unpaid wages and any shortfall between wages paid and those due under the law, including the minimum wage, that Plaintiffs would have received but for Defendants' unlawful payment practices;

d. All unpaid overtime compensation that Plaintiffs would have received but for Defendants' willful violations of the FLSA and NYLL;

e. All spread-of-hours premiums that Plaintiffs are owed under the NYLL and NYCRR;

f. Liquidated damages under the FLSA or the NYLL, but not both, on Plaintiffs' unpaid overtime, minimum wage, and spread-of-hours claims;

g. Statutory damages for Defendants' violations of the NYLL's wage statement requirements, pursuant to NYLL § 198(1-d), on behalf of all Plaintiffs, and of the NYLL's wage notice requirements, pursuant to NYLL § 198(1-b), on behalf of Plaintiffs Garcia Ramirez and Ramos Luque;

h. On behalf of Plaintiffs Garcia Ramirez and Ramos Luque, all wages underpaid in violation of NYLL § 194, together with liquidated damages of up to three hundred percent of that underpayment pursuant to NYLL § 198(1-a);

i. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiffs for all monetary and/or economic damages caused by Defendants' violations of the NYCHRL and the NYSHRL, including the raises withheld from Plaintiff Garcia Ramirez and the pay withheld from Plaintiffs Garcia Ramirez and Ramos Luque because of Defendants' view of their immigration or citizenship status, and all economic loss caused by Defendants' discrimination on the basis of Plaintiffs' national origin;

j. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiffs for all non-monetary and/or compensatory damages, including, but not limited to, compensation for their severe mental anguish and emotional distress,

humiliation, depression, embarrassment, stress and anxiety, loss of self-esteem, self-confidence and personal dignity, and emotional pain and suffering;

k. An award of punitive damages under the NYCHRL and the NYSHRL;

l. Pre-judgment and post-judgment interest, as provided by law;

m. Awarding Plaintiffs their costs and disbursements incurred in connection with this action, including reasonable attorneys' fees, expert witness fees and other costs; and

n. Granting Plaintiffs such other and further relief as this Court finds necessary and proper.

Dated: November 10, 2026
New York, New York

Respectfully submitted,

**JOSEPH & NORINSBERG, LLC**

By: Brendan Sweeney
Brendan Sweeney, Esq.
825 Third Avenue, Suite 2100
New York, New York 10022
Tel.: (212) 227-5700
Fax: (212) 656-1889
*Attorneys for Plaintiffs*